**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

JOAN JARA; AMANDA JARA TURNER;
and MANUELA BUNSTER,

        Plaintiffs,

v.   Case No. 6:13-cv-1426-Orl-37GJK

PEDRO PABLO BARRIENTOS NUNEZ,

        Defendant.

**ORDER**

This cause is before the Court on Plaintiffs' Application for Default Judgment on the Amended Complaint (Doc. 55), filed May 8, 2014.[1] Upon consideration, the Court finds that the motion is due to be denied without prejudice.

**BACKGROUND**

This dispute arises out of the torture and murder of Victor Jara, a folk singer and activist supporter of Chilean President Salvador Allende, who was killed during the military coup that installed General Augusto Pinochet in power in 1973. (Doc. 52, ¶ 1.) Plaintiffs are Joan Jara—Victor Jara's surviving wife—in her individual capacity and as legal representative of his estate, as well as their children[2] in their individual capacities. (*Id.* ¶¶ 4, 15–16.) Defendant is former Lieutenant Pedro Barrientos, previously an officer

---

[1] Plaintiffs initially filed a motion for default judgment as to the original Complaint and supplemental briefing in support of that motion. (Docs. 41, 50.) They renewed the motion after filing the First Amended Complaint and adopted their previous arguments. (Doc. 55, ¶ 8.) The Court has also considered those documents in the disposition of this motion.

[2] Amanda Turner is Victor and Joan Jara's natural child. (Doc. 52, ¶ 15.) Manuela Bunster is Victor Jara's stepdaughter. (*Id.* ¶ 16.) Plaintiffs do not allege that Victor Jara adopted Bunster. (*See id.*)

in the Chilean army who participated in Jara's murder and has since moved to Florida. (*Id.* ¶¶ 1, 8.)

The First Amended Complaint alleges violations of the Torture Victim Protection Act of 1991 ("TVPA"), Pub. L. No. 102-256, 106 Stat. 73 (codified at 28 U.S.C. § 1350 note), and the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350. The claims are: torture (Count I); extrajudicial killing (Count II); cruel, inhuman, or degrading punishment (Count III); arbitrary detention (Count IV); and crimes against humanity (Count V). (*Id.* ¶¶ 68–100.) Counts I and II are brought under both the TVPA and the ATS; Counts III through V are brought under the ATS only. (*See id.*) Count II is brought on behalf of all Plaintiffs in their individual capacities as well as the estate; the other Counts are brought on behalf of the estate only. (*See id.*)

After Defendant failed to answer the Complaint, Plaintiffs moved for and received a clerk's entry of default. (Docs. 35, 36.) Plaintiffs then moved for a default judgment. (Doc. 41.) The Court held a hearing on the liability portion of the motion on January 16, 2014. (Doc. 47.) After the hearing, Plaintiffs filed a supplemental brief in support of their motion. (Doc. 50.) Based on the discussion at the hearing, Plaintiffs filed the First Amended Complaint. (Doc. 52.) They sought and received a clerk's entry of default as to that pleading. (Docs. 53, 54.) Plaintiffs subsequently renewed their motion for a default judgment. (Doc. 55.) This matter is now ripe for the Court's adjudication.

## STANDARDS

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). The Court is then authorized to enter

a default judgment. Fed. R. Civ. P. 55(b)(2). However, "a defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). The Court may conduct a hearing to determine the truth of any allegations or the amount of damages. Fed. R. Civ. P. 55(b)(2)(B)–(C).

## DISCUSSION

### I.   ATS

The U.S. Supreme Court recently held that the ATS does not generally have extraterritorial application—that is, it does not reach tortious conduct taking place entirely outside of the United States.[3] *See Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659, 1669 (2013). However, the Court left open a narrow avenue for recognizing wholly extraterritorial torts: conduct outside the United States that nevertheless "touch[es] and concern[s] the territory of the United States . . . with sufficient force to displace the presumption against extraterritorial application" could give rise to an ATS claim. *Id.* at 1669.

At the outset, the Court finds that *Kiobel* forecloses all of Plaintiffs' ATS claims because the tortious conduct took place entirely outside the United States. *See id.* Though *Kiobel* provides for some possible extraterritorial application of the ATS, the wholly foreign conduct here—torture of a Chilean citizen in Chile for protesting the overthrow of the Chilean government—simply does not "touch and concern" the United

---

[3] Unlike the ATS, the TVPA does have extraterritorial application. *See Kiobel*, 133 S. Ct. at 1669 (Kennedy, J., concurring) (noting that the TVPA reaches "human rights abuses committed abroad" where the ATS cannot); *see also* H.R. Rep. No. 102-367(I), at 4 (1991).

3

States with such force as to overcome the presumption against extraterritoriality.[4] *Cf. Mwani v. Laden*, 947 F. Supp. 2d 1, 5 (D.D.C. 2013) (distinguishing *Kiobel* and allowing an ATS claim to proceed where the conduct occurred outside the United States but touched and concerned it deeply—an attack on and around a U.S. Embassy that was partially planned in the United States); *Sexual Minorities Uganda v. Lively*, 960 F. Supp. 2d 304, 310 (D. Mass. 2013) (holding that *Kiobel*'s presumption against extraterritorial application did not apply where the defendant's conduct "occurred, in substantial part, within" the United States, including committing torts in Springfield, Massachusetts).

Therefore, Plaintiffs' motion is due to be denied as to the ATS claims, which are insufficiently pled and cannot support a default judgment. The ATS claims in Counts I and II are due to be dismissed, and Counts III through V are due to be dismissed in their entirety.[5] The Court will now turn to the remaining TVPA claims in Counts I and II.

---

[4] Plaintiffs argue that the United States has an interest in not harboring torturers and therefore in extending the reach of the ATS to defendants who live in the United States even though the conduct occurred outside it. (Doc. 50, p. 12.) While that view was considered by the Supreme Court, it was rejected by the majority, garnering only a minority of votes; therefore, this position is simply not the law of the land. *See Kiobel*, 133 S. Ct. at 1670 (Breyer, J., concurring in judgment). Further, this Court's application of *Kiobel*'s touch-and-concern test does not foreclose Plaintiffs' claims and let Defendant off the hook entirely; torture and extrajudicial killing are cognizable under the TVPA, which was enacted in part to provide a remedy where the ATS cannot. *See supra* note 3.

[5] Even if they were cognizable despite *Kiobel*, the sufficiency of Counts III through V is suspect: the U.S. Court of Appeals for the Eleventh Circuit does not recognize cruel, inhuman, or degrading punishment claims and is skeptical of the viability of arbitrary detention and crimes against humanity claims. *See Aldana v. Del Monte Fresh Produce, N.A.*, 416 F.3d 1242, 1246–47 (11th Cir. 2005) (citing *Sosa v. Alvarez-Machain*, 542 U.S. 692, 728–29 (2004) (noting that "great caution" is in order when opening the door to new causes of action under the ATS)).

**II.     Torture**

The TVPA provides: "An individual who, under actual or apparent authority, or color of law, of any foreign nation . . . subjects an individual to torture shall, in a civil action, be liable for damages to that individual . . . ." 28 U.S.C. § 1350 note § 2(a)(1). Torture is defined as:

> [A]ny act, directed against an individual in the offender's custody or physical control, by which severe pain or suffering . . . , whether physical or mental, is intentionally inflicted on that individual for such purposes as obtaining from that individual or a third person information or a confession, punishing that individual for an act that individual or a third person has committed or is suspected of having committed, intimidating or coercing that individual or a third person, or for any reason based on discrimination of any kind . . . .

*Id.* § 3(b).

As a threshold matter, the First Amended Complaint sufficiently establishes the applicability of the TVPA to this claim. Defendant is liable as a state actor; when he tortured and killed Victor Jara, Defendant was acting on the authority of General Pinochet and the Chilean army following the military coup. (Doc. 52, ¶¶ 1–3, 10, 26–28.) Plaintiff Joan Jara, as the legal representative of her husband's estate, is entitled to relief. (*Id.* ¶ 15.)

Further, the First Amended Complaint properly alleges all of the elements of torture. Jara was in Defendant's custody. (*Id.* ¶¶ 10, 27, 29, 30, 34.) Jara experienced severe pain and suffering at Defendant's hand; Defendant ordered his subordinates to "brutally beat" Jara, and then Defendant himself "play[ed]" Russian Roulette with Jara and eventually shot him in the head. (*Id.* ¶¶ 31–36.) Defendant's actions were intentional, in order to punish Jara for his support of President Allende. (*Id.* ¶ 35.) Thus, the First Amended Complaint establishes Defendant's liability for torture under the TVPA.

### III.  Extrajudicial Killing

The TVPA further provides:

> An individual who, under actual or apparent authority, or color of law, of any foreign nation . . . subjects an individual to extrajudicial killing shall, in a civil action, be liable for damages to the individual's legal representative, or to any person who may be a claimant in an action for wrongful death.

28 U.S.C. § 1350 note § 2(a)(2). Extrajudicial killing is defined as "a deliberated killing not authorized by a previous judgment pronounced by a regularly constituted court affording all the judicial guarantees which are recognized as indispensable by civilized peoples." *Id.* § 3(a).

The facts detailed above also establish Defendant's liability for extrajudicial killing. The First Amended Complaint adequately alleges that Defendant's murder of Jara was not properly authorized by a court and was instead part of the Chilean army's plan to kill individuals who supported President Allende. (*See* Doc. 52, ¶¶ 24–25.)

Therefore, the only question that remains is whether these Plaintiffs can establish entitlement to relief. Unlike the torture claim (which is brought only on behalf of Jara's estate), the extrajudicial killing claim is brought both by the estate and by Plaintiffs in their individual capacities. (Doc. 52, ¶ 77.) The TVPA provides that only the "individual's legal representative, or . . . any person who may be a claimant in an action for wrongful death" may bring such an action. 28 U.S.C. § 1350 note § 2(a)(2); *see also Baloco ex rel. Tapia v. Drummond Co.*, 640 F.3d 1338, 1346 (11th Cir. 2011). Thus, the First Amended Complaint clearly establishes Plaintiff Joan Jara's entitlement to relief on this claim as the estate's legal representative. However, the question of whether the children are proper wrongful-death claimants is more complicated.

Under the TVPA, "state law should govern the determination of whether a plaintiff is a claimant in an action for wrongful death and, where state law would provide no remedy, a court may apply the foreign law that would recognize the plaintiff's claim." *Baloco*, 640 F.3d at 1349. However, the U.S. Court of Appeals for the Eleventh Circuit has not yet resolved the issue of whether courts must apply the substantive state law or the choice-of-law rules of the state in making that determination. *See id.* (declining to decide that issue because the result was the same either way in that particular case).

Under substantive Florida state law, the children are not proper wrongful-death claimants—only the personal representative may bring the claim.[6] *See* Fla. Stat. § 768.20 ("[A wrongful death] action shall be brought by the decedent's personal representative, who shall recover for the benefit of the decedent's survivors and estate all damages . . . caused by the injury resulting in death."); *see also Thompson v. Hodson*, 825 So. 2d 941, 949 (Fla. 1st DCA 2002) ("By statute, a wrongful death claim is brought by one plaintiff— the personal representative of the deceased."). Because substantive state law leaves the children without a remedy, the Court must then look to Chilean law. *See Baloco*, 640 F.3d at 1349 n.12 (concluding that because Alabama only allowed personal representatives to bring wrongful-death claims, the TVPA required the court to look to foreign law to determine whether the decedent's children had a remedy).

---

[6] Further, Jara's stepdaughter—Manuela Bunster—would not even be entitled to recover from the estate as a survivor because the First Amended Complaint does not establish that she was adopted by Jara, *see supra* note 2. *See, e.g., Grant v. Sedco Corp.*, 364 So. 2d 774, 774 (Fla. 2d DCA 1978) (holding that a minor who is neither the natural child nor the legally adopted child of a decedent does not have a claim to a wrongful-death estate).

Alternatively, under choice-of-law rules, Florida applies a "significant relationships test," which provides that the rights of the parties in a tort claim are determined by the local law which "has the most significant relationship to the occurrence." *State Farm Mut. Auto. Ins. Co. v. Olsen*, 406 So. 2d 1109, 1110 (Fla. 1981) (citation and internal quotation marks omitted). Factors to consider in making this determination include: (1) the place where the injury occurred; (2) the place where the tortious conduct occurred; (3) the residence of the parties; and (4) the place where the relationship between the parties is centered. *Id.* at 1111–12 (citation and internal quotation marks omitted). Under the significant relationships test, Chilean law also applies, as the injury occurred in Chile, the tort occurred in Chile, and the relationship of the parties was centered in Chile and occurred due to an overthrow of the Chilean government.

Therefore, under either standard, the Court must apply the wrongful-death law of Chile, not Florida, to determine whether the children are entitled to bring this extrajudicial killing claim. However, the First Amended Complaint contains no allegations that the children would be considered claimants under Chilean wrongful-death law. *Cf. Baloco*, 640 F.3d at 1349–50 & n.13 (noting that the decedent's children alleged that they were legal beneficiaries under the foreign law, which the Court accepted as true at the pleading stage). Thus, as pled, the extrajudicial killing claim is insufficiently stated with regard to the children's claims. To make further determinations about the viability of the children's claims will require more information and allegations about the status of the children under Chilean wrongful-death law. *See id.* at 1349 (in addition to the children's allegations of their beneficiary status, also relying on expert legal opinions proffered by the children to determine the state of the foreign law).

In sum, Plaintiff Joan Jara's TVPA claims of torture and extrajudicial killing are adequately stated in the First Amended Complaint. All of the ATS claims and Plaintiffs Amanda Turner and Manuela Bunster's claims are due to be dismissed. As the viability of the children's claims is unclear, the Court will allow Plaintiffs to replead to clarify the status of the children as possible claimants under Chilean wrongful-death law. Thus, although Plaintiff Joan Jara's TVPA claims as presently pled would support the entry of default judgment, the Court will deny the instant motion in its entirety without prejudice in order to avoid the potential entry of piecemeal judgments. *See* Fed. R. Civ. P. 54(b).

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Plaintiffs' Application for Default Judgment on the Amended Complaint (Doc. 55) is **DENIED WITHOUT PREJUDICE**.

2. The ATS claims in Counts I and II; Plaintiffs Amanda Turner and Manuela Bunster's claims in Count II; and Counts III, IV, and V in their entirety (Doc. 52) are **DISMISSED WITHOUT PREJUDICE**.

3. On or before Wednesday, July 30, 2014, Plaintiffs have leave to file a second amended complaint consistent with the directives in this Order.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on June 27, 2014.

ROY B. DALTON JR.
United States District Judge

9

Copies:

Counsel of Record