**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

JOAN JARA; AMANDA JARA TURNER; and MANUELA BUNSTER,

        Plaintiffs,

v.                                     Case No. 6:13-cv-1426-Orl-37GJK

PEDRO PABLO BARRIENTOS NUNEZ,

        Defendant.

## ORDER

This cause is before the Court on the following:

1. Plaintiffs' Dispositive Motion for Partial Summary Judgment and Memorandum of Law in Support of Plaintiffs' Motion for Partial Summary Judgment (Doc. 137), filed January 15, 2016;

2. Defendant's Response to Plaintiff's [sic] Motion for Partial Summary Judgment (Doc. 139), filed February 12, 2016;

3. Plaintiffs' Reply to Defendant's Response to Plaintiffs' Dispositive Motion for Partial Summary Judgment and Memorandum of Law in Support of Plaintiffs' Reply (Doc. 140), filed February 26, 2016; and

4. Plaintiffs' Unopposed Motion *in Limine* and Incorporated Memorandum of Law (Doc. 144), filed April 21, 2016.

This action arises out of the torture and murder of Victor Jara ("**Victor**")—husband of Plaintiff Joan Jara ("**Joan**") and father to Plaintiffs Amanda Jara Turner and Manuela

Bunster—during the September 1973 military coup that installed General Augusto Pinochet in power in Chile. (*See* Doc. 111 ("**Operative Complaint**"); *see also* Doc. 137-2, pp. 56–57.)

Subsequent to Plaintiffs learning of Victor's death in September 1973, the following events occurred:

(1) Joan "reported [Victor's] torture and killing to the relevant agencies, including the Embassy of the United Kingdom in Santiago";

(2) In 1973, Joan gave a series of interviews regarding Victor's torture and death, "pleading for those with information to come forward";

(3) Joan attempted to "piece together" Victor's torture and killing through other victim witnesses;

(4) On September 8, 1978, Joan filed a criminal complaint with the Chilean Criminal Court of First Instance, which led to an investigation into Victor's torture and death that was closed in 1982;

(5) Despite having fled for their safety, in 1984, "Plaintiffs returned to Chile to further pursue their investigation";

(6) In 1990, Plaintiff provided the National Truth and Reconciliation Commission—which was known as the Rettig Commission and was formed to investigate abuses that occurred during General Pinochet's regime—with information they had gathered regarding Victor's torture and death;

(7) In 1994, Plaintiffs started the Victor Jara Foundation "with the aim of preserving [Victor's] life's work and advocating for justice";

(8) On August 16, 1999—after General Pinochet was arrested in London—Plaintiffs filed a complaint against General Pinochet with the Chile Court of Appeals for the aggravated homicide of Victor, prompting a new investigation ("**the 1999 Investigation**");

    (9)    In 2001, the Chile Court of Appeals consolidated the 1978 and 1999 Investigations ("**the 2001 Consolidated Investigation**");

    (10)    In 2008, the 2001 Consolidated Investigation was closed due to the court's inability to determine who killed Victor;

    (11)    After the close of the 2001 Consolidated Investigation, Plaintiffs "formally protested, demanding that the [Chilean] government continue to investigate" Victor's torture and death, causing the Santiago Court of Appeals to reopen the 2001 Consolidated Investigation;

    (12)    In 2009, Plaintiffs received testimonial evidence that Defendant Pedro Pablo Barrientos Nunez had killed Victor;

    (13)    Unable to locate Defendant, Joan made a public appeal for those with knowledge of the circumstances surrounding Victor's torture and death to come forward;

    (14)    In May 2012, a Chilean television station aired an investigative report revealing that Defendant was residing in Florida;

    (15)    On December 26, 2012, the Chilean Court of Appeals charged Defendant as a perpetrator in the killing of Victor ("**2012 Indictment**"); and

    (16)    On September 4, 2013, unable to pursue the claims in Chile,[1] Plaintiffs initiated the present civil action ("**Instant Action**") (collectively, "**the Process**").

(Doc. 137-5, pp. 4–8, 34; Doc. 48, ¶¶ 3–5, 10–16; Doc. 1.)[2]

During the Process, Plaintiffs encountered numerous obstacles, including:

    (1)    "[T]he suppression of evidence through denial of facts or through cover stories that attempted to deflect

---

[1] Under Chilean law, Defendant's residence in Florida prevented his prosecution in Chile, which in turn prevented any civil proceeding against Defendant in Chile. (Doc. 48, ¶¶ 16–18.)

[2] The facts supporting the Process are undisputed.

3

>
> responsibility" during General Pinochet's regime; (Doc. 137-2, pp. 23–26, 28, 32, 38; Doc. 48, ¶¶ 6–9, 17–18)
>
> (2) Repressive violence during, and positive propaganda to justify, General Pinochet's regime;
>
> (3) The issuance of the Chilean Decree-Law 2191 in 1978, which was strictly enforced until 1998 and exempted from criminal liability the acts that occurred between September 1973 and March 1978,
>
> (4) The maintenance of General Pinochet's regime from 1973 to 1990 when Patricio Aylwin was voted into presidency;
>
> (5) The Rettig Commission's inability to identify the persons responsible for Victor's death for its 1991 report;
>
> (6) General Pinochet's remaining command of the Chilean Army until 1998; and
>
> (7) Chilean law that prevented the criminal prosecution of a defendant *in abstenia* and further prohibited a decision as to civil liability until the completion of any criminal proceedings against the defendant (collectively, "**the Obstacles**").

(Doc. 137-1, pp. 34–35; 137-2, pp. 23–26, 28, 32, 38; Doc. 48, ¶¶ 6–9, 17–18.)

The Instant Action is currently proceeding on Plaintiffs' two-count Operative Complaint, which alleges that Defendant violated the Torture Victim Protection Act of 1991 ("**TVPA**") through his participation in and command over the detention, "brutal torture," and murder of Victor ("**TVPA Claims**"). (Doc. 111, ¶¶ 1, 3, 53–81.)

In anticipation of trial, which will commence on June 13, 2016 (*see* Doc. 141), Plaintiffs move for partial summary judgment, seeking a disposition in their favor on the following affirmative defenses: (1) the action is time-barred under the TVPA's ten-year statute of limitations ("**SOL Defense**"); and (2) Plaintiffs' alleged failure to exhaust local

remedies in Chile as required by the TVPA ("**Exhaustion Defense**").[3] (Doc. 137.) Defendant opposes (Doc. 139), and Plaintiffs have responded (Doc. 140). The matter is ripe for adjudication.[4]

## STANDARDS

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). As to issues for which the movant would bear the burden of proof at trial, the "movant must affirmatively show the absence of a genuine issue of material fact, and support its motion with credible evidence demonstrating that no reasonable jury could find for the non-moving party on all of the essential elements of its case." *Landolfi v. City of Melbourne, Fla.*, 515 F. App'x 832, 834 (11th Cir. 2012) (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993)). As to issues for which the non-movant would bear the burden of proof at trial, the movant has two options: (1) the movant may simply point out an absence of evidence to support the non-moving party's case; or (2) the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *U.S. v. Four Parcels of Real Prop. in Green & Tuscaloosa*

---

[3] Defendant failed to answer the Operative Complaint. His failure to answer is not fatal, however, because he raised the SOL and Exhaustion Defenses in a prior motion to dismiss the Operative Complaint. (*See* Doc. 112); *see also Dyer v. Wal-Mart Stores, Inc.*, 535 F. App'x 839, 843 (11th Cir. 2013) ("Moreover, although Wal-Mart did not file an answer to [plaintiff's] amended complaint, it filed a motion to dismiss, setting forth its affirmative defenses. Therefore, Wal-Mart defended the action against it."). Moreover, the allegations in the Operative Complaint are substantively similar to the allegations in the previous iteration of the complaint (*compare* Doc. 63, *with* Doc. 112), to which Defendant answered and raised the SOL and Exhaustion Defenses. (Doc. 94.)

[4] Additionally, Plaintiffs filed an unopposed motion *in limine* that is due to be granted. (*See* Doc. 144, p. 10.)

*Cntys. in State of Ala.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (citing *Celotex Corp.*, 477 U.S. at 325).

"The burden then shifts to the non-moving party, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citing *Fitzpatrick*, 2 F.2d at 1115–17). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Four Parcels*, 941 F.2d at 1437 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248) (1986)).

The Court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the non-movant. *Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006). However, "[a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).

## DISCUSSION

Plaintiffs move for summary judgment as to the Exhaustion and SOL Defenses. (Doc. 137.) The Court will address each Defense in turn.

**I.     Exhaustion Defense**

The Exhaustion defense is an affirmative defense for which Defendant bears a "substantial" burden of proof. *Jean v. Dorelien*, 431 F.3d 776, 781 (11th Cir. 2005). To prevail on the Exhaustion Defense, Defendant must demonstrate that Plaintiffs failed to exhaust all "adequate and available" remedies in Chile. *See* S. Rep. No. 249, 102d Cong., 1st Sess., at 2 (1991).

> Once [Defendant] makes a showing of remedies abroad which have not been exhausted, the burden shifts to [Plaintiff] to rebut by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile. The ultimate burden of proof and persuasion on the [Exhaustion Defense], however, lies with [Defendant].

*Jean*, 431 F.3d at 782 (quoting S. Rep. No. 102–249, at 9–10)).

In support of their Motion, Plaintiffs provide evidence of the Process to demonstrate that Defendant are unable to prove the Exhaustion Defense. (*See* Doc. 137-5, pp. 4–8; Doc. 48, ¶¶ 3–5, 10–16; Doc. 1.) Defendant counters with affirmative evidence of an alternative legal remedy that Plaintiffs could have pursued to seek financial compensation for Victor's torture and death. (Doc. 139, p. 3; Doc. 112-1, ¶ 6.) Defendant maintains that, rather than pursuing a criminal action based on the 2012 Indictment, Plaintiffs could have maintained a civil lawsuit for crimes committed by governmental agents ("**Alternative Remedy**"). (Doc. 112-1, ¶ 7.) The "more efficient" Alternative Remedy only requires "the existence of an activity . . . performed by a Government agency[,] [s]uch as illegal, fraudulent or negligent acts, events or omissions from its agents," and does not require the identification or appearance of Defendant or any other governmental agents involved in Victor's torture or death. (*Id.* ¶¶ 9–13, 21.) According to Defendant, because the Chilean government has specifically acknowledged that Victor's death occurred in the hands of its agents (*see* Doc. 137-1, pp. 55–57), Plaintiffs could have pursued the Alternative Remedy against the Chilean government. (*Id.* ¶¶ 15–21.) Defendant has, therefore, demonstrated an adequate and available local remedy.[5]

---

[5] The Court finds persuasive the rational that an action for financial compensation from the government—such as the Alternative Remedy—is an adequate remedy that must be exhausted in the local forum prior to bringing a TVPA claim against a defendant in the United States. *See Mamani v. Sanchez Berzain*, 636 F. Supp. 2d 1326, 1331–32

Nevertheless, Plaintiff has demonstrated that the Alternative Remedy was unobtainable. (*See generally* Doc. 137-4, pp. 10–13 (discussing the inadequacy of the Alternative Remedy).) The Alternative Remedy is subject to a four-year statute of limitations from the date "that the relatives of the victim were certain that a crime had been perpetrated." (*Id.* at 12 (citing Chilean law).) Plaintiffs first learned of Victor's torture and death in on September 18, 1973. (Doc. 137-5, p. 4.) Thus, they must have commenced the Alternative Remedy by September 18, 1977. Given that General Pinochet's regime was still in power at that time, the Court concludes that the Alternative Remedy would have been unobtainable, ineffective, and futile for Plaintiffs between 1973 and 1977. *See Mamani*, 636 F. Supp. 2d at 1332 (recognizing that "[i]n most cases where courts have found local remedies to be ineffective or futile, the foreign government actors being sued have remained in power . . ., thereby rendering any judgments against them worthless"). As such, Plaintiffs are entitled to summary judgment on the Exhaustion Defense.

## II.     SOL Defense

Claims brought under the TVPA are subject to a ten-year statute of limitations ("**SOL**"), which is subject to equitable tolling. *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1153–1154 (11th Cir. 2005). "Equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Jean*, 431 F.3d at 779 (citation omitted). "[W]hether the doctrine of equitable tolling saves a cause of action otherwise barred by the statute of limitations is a question of law" for the Court. *Justice v. U.S.*, 6 F.3d 1474, 1478 (11th Cir. 1993).

Upon consideration of the record evidence concerning the Obstacles, the Court

---

(S.D. Fla. 2009).

concludes as a matter of law that the SOL was tolled while General Pinochet remained in power and the Amnesty Law was in full effect. *See Jean*, 431 F.3d at 780 (recognizing that "every court that has considered the question of whether . . . a repressive authoritarian regime constitute[s] 'extraordinary circumstances' . . . has answered in the affirmative" and stating that litigation is "often not [] possible until there has been a regime change in the plaintiff's country of origin). The remaining question, then, is whether the SOL was tolled beyond 1998.

Plaintiffs argue that they are entitled to summary judgment on the SOL Defense because "intractable obstacles" prevented their identification of Defendant until 2009. (Doc. 137, p. 22.) In support, they rely on evidence of the Obstacles and of their "diligence" in investigating Victor's torture and death beginning in 1973. (*Id.* at 22–25.) Defendant responds that Plaintiffs were able to investigate Victor's death and torture in a "meaningful way" starting in 1999, and that his identity was neither deliberately concealed nor falsified.[6] (Doc. 139, pp. 10–11.)

Although the Eleventh Circuit often requires deliberate concealment or affirmative misconduct to toll the SOL, *see, e.g.*, *Cabello*, 402 F.3d at 1155, the TVPA legislation also provides that the SOL should be tolled "where the plaintiff has been unable to discover the identity of the offender," *see* S. Rep. 102–249, at 10. The record evidence relating to the Process compels a finding that, despite Plaintiffs' diligent efforts to identify those responsible for Victor's torture and death, they were unable to identify Defendant

---

[6] The bulk of Defendant's response regarding the SOL Defense pertains to the years during which General Pinochet was still in power and the Amnesty Law was still in effect. (*See* Doc. 139, pp. 5–10.) Having already found that the SOL was tolled during these times, the Court rejects these arguments and will focus solely on the arguments relating to the years since 1998.

until 2009. (*See* Doc. 137-5, pp. 4–8, 34; Doc. 48, ¶¶ 3–5, 10–16; Doc. 1.) That Plaintiffs were sufficiently diligent to warrant tolling beyond 1998 is particularly evidenced by their: (1) initiation of the 1999 Investigation, which in turn led to the 2001 Consolidated Investigation; (2) public protest in 2008 to keep the 2001 Consolidated Investigation open; (3) public plea for information in 2009 after learning of Defendant's involvement in Victor's torture and death; and (4) prompt filing of the Instant Action upon learning that the Chilean court could not pursue an action based on the 2012 Indictment. (*See* Doc. 137-5, pp. 7–8; Doc. 48, ¶¶ 10–13.) The record evidence, therefore, supports a finding as a matter of law that the SOL was tolled until Plaintiffs discovered Defendant's identity in 2009.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Plaintiffs' Dispositive Motion for Partial Summary Judgment and Memorandum of Law in Support of Plaintiffs' Motion for Partial Summary Judgment (Doc. 137) and Plaintiffs' Unopposed Motion *in Limine* and Incorporated Memorandum of Law (Doc. 144) are **GRANTED**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on May 3, 2016.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record